BRIAN H GETZ, ESQ. (CSBN 85593)
LAW OFFICES OF BRIAN H GETZ
44 Montgomery Street, Suite 3850
San Francisco, CA  94104
Telephone: (415) 912-5886
Facsimile: (415) 438-2655

Attorney for Defendant
KARIM ISKANDER BAYYOUK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KARIM ISKANDER BAYYOUK, <br><br> Defendants. | CASE NO. CR 12-0420 EMC <br><br> **DEFENDANT KARIM BAYYOUK'S OPPOSITION TO UNITED STATES' MOTION FOR A JOINT TRIAL OF SEPARATE CASES** <br><br> **DATE:  DECEMBER 19, 2012** <br> **TIME:  2:30 P.M.** <br> **CTRM: 5, 17TH FLOOR** |

## INTRODUCTION

Defendant Karim Iskander Bayyouk, by and through his undersigned counsel, hereby opposes the motion filed by the government to join this case with that of Bassam Yacoub Salman for trial. The government elected to file the two cases separately, and they should appropriately continue as separate cases.  Defendant Bayyouk is charged with a single count of obstruction of proceedings based on alleged statements to investigators with the Securities and Exchange Commission, in violation of 18 U.S.C. §1505.  Defendant Salman, on the other hand, is charged with conspiracy to commit securities fraud (with conspirators <u>other</u> than Mr. Bayyouk), and four counts of aiding and abetting securities fraud.  The overlap of proof required for the government to prove the two cases is

1  not substantial enough for joinder, and the judicial economy which may be gained by a joint trial

2  does not substantially outweigh the prejudice to Mr. Bayyouk which would result from a joint trial.

### THE INDICTMENT AND EVIDENCE AGAINST MR. BAYYOUK

4       The Indictment in this case was filed on May 29, 2012.  As noted, Mr. Bayyouk is charged

5  with a single count of obstruction of justice.  The five-paragraph-long indictment alleges that, on May

6  31, 2007, attorneys from the SEC's Division of Enforcement in San Francisco, California, conducted

7  a telephone interview of Mr. Bayyouk as part of the SEC's investigation into securities fraud and

8  insider trading relation to purchases and sales of securities in Biosite Incorporated ("Biosite").  It is

9  alleged that, during this telephone interview, Mr. Bayyouk made knowingly false statements which

10 impeded the SEC and its investigation.

11      Thus Mr. Bayyouk is charged with obstruction, not insider trading, in regard to the

12 investigation into insider trading of securities in one company, Biosite.  As the government details in

13 its motion, the evidence against Mr. Bayyouk will center on (1) his allegedly false denial that he

14 discussed Biosite with anyone before he made the relevant trades; and (2) his allegedly false denial

15 that he knew Maher Kara.  Government's Motion at 3:11-14.  The government alleges in its motion

16 that it intends to rely on two years of records showing that Mr. Bayyouk and Mr. Salman regularly

17 communicated about trading securities to show that Mr. Bayyouk's claim that he did not discuss

18 Biosite with anyone else is false, and that it will seek to introduce evidence showing that Mr.

19 Bayyouk attended Maher Kara's wedding to show that his claim that he did not know Maher Kara

20 was false.  *Id.* at 3:16-22.

### THE INDICTMENT AND EVIDENCE AGAINST MR. SALMAN

22      The ten-page Indictment against Mr. Salman was filed on September 1, 2011, some nine

23 months before Mr. Bayyouk was indicted.  Mr. Salman is charged in Count One with conspiracy to

24 commit securities fraud, based on allegations that he conspired with Maher Kara and Michael Kara to

25 use insider information to profit from trading in four securities: Bone Care International, Andrx

26 Corporation, United Surgical Partners International, Inc. and Biosite.  Specifically, it is alleged that

27 Maher Kara obtained insider information as a result of his employment, and disclosed that

28 information to his brother, who then disclosed it to Mr. Salman, who traded or caused others to trade

on that information.  It is alleged that Mr. Salman disclosed information to Mr. Bayyouk, and that Mr. Salman used or caused Mr. Bayyouk to use his Comerica Securities brokerage account to purchase and sell securities using insider information and to conceal the purchase and sale.

However, as noted above, Mr. Bayyouk is not charged in the conspiracy, only with obstruction based on his allegedly false statements to SEC investigators.

## THE GOVERNMENT'S MOTION

The government has moved to join the two cases for trial pursuant to Rule 13 of the Federal Rules of Criminal Procedure.  That rule provides that a Court <u>may</u> order two indictments to be tried together if the offenses could have been joined in a single indictment.  Rule 13 is permissive rather than mandatory, and even when trying cases together is permitted, it is still within the Court's discretion to try the cases separately.  Federal Practice & Procedure, §21 Trying Indictments or Informations Together (2012).  In exercising its discretion, the Court should weigh the efficiency and convenience of a single trial against the risks of prejudice to the defendant from a single proceeding. *Id*.  And if there are significant doubts about the fairness in trying all charges and defendants together, the Court should refuse to consolidate.  *Id*.

## JOINDER IS NOT PROPER IN THIS CASE

Under Rule 8(b) of the Federal Rules of Criminal Procedure, the sole basis for joinder of charges against multiple defendants is that the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  *United States v. Roselli*, 432 F.2d 879, 898 (9th Cir. 1970).  Mere factual similarity between the events is not a sufficient basis for joinder. *United States v. Vasquez-Velasco*, 15 F.3d 833, 843 (9th Cir. 1994).  Whether or not multiple offenses joined in an indictment constitute a "series of acts or transactions" turns on the degree to which they are related.  In the cases under rule 8(b), that relation is most often established by showing that substantially the same facts must be adduced to prove each of the joined offenses. *United States v. Gentile*, 495 F.2d 626 (5th Cir. 1974); *United States v. Roselli*, 432 F.2d at 899.  When, however, as in this case, joined offenses are not provable by the same evidence, joinder is improper.  *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. Cal. 1990); *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978).

1    "[A] joint trial is particularly appropriate where the co-defendants are charged with

2    conspiracy, because the concern for judicial efficiency is less likely to be outweighed by the possible

3    prejudice to the defendants when much of the same evidence would be admissible against each of

4    them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).  However,

5    joinder is improper where, looking only to the face of the indictment, it appears that one defendant is

6    not alleged to have participated in the conspiracies alleged in certain counts against the other

7    defendant, and it therefore cannot be said that all the offenses arose out of the same "series of acts or

8    transactions" because the government necessarily was required to adduce proof of substantially

9    different facts in order to support conviction on the counts unrelated to the first defendant.  *United*

10   *States v. Martin*, 567 F.2d 849, 853 (9th Cir. Cal. 1977); *see also United States v. Satterfield*, 548

11   F.2d 1341, 1344 (9th Cir. 1977) (defendants were misjoined where much of the evidence at trial

12   related to offenses committed by the other defendant alone).

13          In this case, the defendants are <u>not</u> charged with the same offense, and Mr. Bayyouk is <u>not</u>

14   charged with participation in the conspiracy.  As a result, there is much evidence which the

15   government will presumably attempt to introduce against Mr. Salman which will <u>not</u> be relevant or

16   admissible in the separate trial of Mr. Bayyouk.

17          In its motion, the United States claims that the evidence against both defendants is deeply

18   intertwined.  Government Motion at 3:24.  The government claims that both cases will require

19   detailed proof of the defendants' alleged relationship with Maher Kara and Michael Kara, detailed

20   proof of their relationship to each other and their alleged use of Mr. Bayyouk's brokerage account "to

21   conceal and profit from the illegal insider information Michael Kara conveyed to defendant Salman."

22   *Id*. at 3:23-27.  The government also claims that both cases center on the same series of acts or

23   transactions.  *Id*. at 3:27.

24          But this detailed proof that the government claims is required in both cases is not in fact

25   required in Mr. Bayyouk's case.  Mr. Bayyouk's case is much more limited in scope.  The

26   government's motion concedes that the evidence against Mr. Bayyouk will aim to prove (1) his

27   allegedly false denial that he discussed Biosite with anyone before he made the relevant trades; and

28   (2) his allegedly false denial that he knew Maher Kara.  Government's Motion at 3:11-14.  The

government alleges in its motion that it intends to rely on two years of records showing that Mr. Bayyouk and Mr. Salman regularly communicated about trading securities to show that Mr. Bayyouk's claim that he did not discuss Biosite with anyone else is false, and that it will seek to introduce evidence showing that Mr. Bayyouk attended Maher Kara's wedding to show that his claim that he did not know Maher Kara was false. *Id*. at 3:16-22. Thus the evidence against Mr. Bayyouk, to prove the single count of obstruction, will be designed to prove that he spoke with Mr. Salman about Biosite, and that he knew Maher Kara. Mr. Bayyouk's relationship with Michael Kara, whether Michael Kara received insider information from his brother, and even whether Michael Kara tipped Mr. Salman, is not required proof as to Mr. Bayyouk. Similarly, Mr. Bayyouk's relationship with Maher Kara is also tangential, except for the fact that Mr. Bayyouk allegedly knew him because he attended his wedding. Further, the government's evidence designed to prove the allegation that Mr. Bayyouk spoke with Mr. Salman prior to trading in Biosite will also necessarily be more limited than that required to show that Mr. Salman obtained information which he knew to be material, non-public information and confidential information, and that he traded or caused others to trade upon such information.

Here, the government elected to file separate Indictments, and elected not to charge Mr. Bayyouk with conspiracy. Substantially the same facts are <u>not</u> required for the government to prove its case against Mr. Bayyouk. As a result, it would be improper to join the cases.

### JOINDER WOULD IMPERMISSIBLY PREJUDICE MR. BAYYOUK

Further, even if the Court finds that the defendants may be joined for trial under Rule 8(b), separate trials are still required because Mr. Bayyouk would be severely prejudiced by a joint trial. Joinder should be limited to those cases where considerations of trial efficiency clearly outweigh a defendant's interest in a separate trial. *United States v. Satterfield*, 548 F.2d at 1347. A single joint trial is impermissible if it violates a defendant's right to a fundamentally fair trial. *See e.g*., Federal Rule of Criminal Procedure 14.

Prejudice may result from the admission of evidence admissible only against a co-defendant; *United States v. Cruz*, 127 F.3d 791, 799 (9th Cir. 1997), *abrogated on other grounds, United States v. Jimenez Recio*, 537 U.S. 270, 123 S. Ct. 819, 154 L. Ed. 2d 744 (2003). Guilt cannot be

1   established by mere association.   *Ramirez v. United States*, 363 F.2d 3, 34 (9th Cir. 1966).

2        In support of its motion, the United States relies on *United States v. Williams*, 265 F.2d 214

3   (9th Cir. 1959) and other cases in which a single defendant was indicted in two separate cases, and the

4   government attempted to join both indictments for trial.   In the single-defendant scenario, the sole

5   question is the admissibility of the evidence of offenses charged in one indictment in the trial on the

6   other.   Here, by contrast, the spillover effect of a joint trial is much broader.   Mr. Bayyouk will

7   necessarily and gravely be tainted by the evidence introduced solely against Mr. Salman.   And, given

8   the disparity of the magnitude of the charges against each defendant, there will be a large amount of

9   evidence that would otherwise not be admissible as to Mr. Bayyouk.   In *United States v. Donaway*,

10  447 F.2d 940, 943 (9th Cir. 1971), the Ninth Circuit found that a joint trial was an abuse of discretion

11  due to disparity of the evidence.   The Ninth Circuit has stated that its "foremost concern" is "whether

12  the jury can reasonably be expected to compartmentalize the evidence as it relates to separate

13  defendants in the light of its volume and limited admissibility" (*United States v. Brady*, 579 F.2d

14  1121, 1128 (9th Cir. 1978)) and that "[w]e must be wary of situations where a jury might impute the

15  guilt of some defendants to other defendants" (*United States v. De Rosa*, 670 F.2d 889, 898 (9th Cir.

16  1982), citing *United States v. Satterfield*, 548 F.2d 1341, 1346 (9th Cir. 1977).

17       In an attempt to deflect the argument that joinder is improper and prejudicial because the

18  defendants are not charged with the same crimes and the evidence against them will be disparate, the

19  government states that it will argue that Mr. Bayyouk lied to the SEC to conceal his trading activity

20  and "common plan with defendant Salman."   *Id.* at 6:3-4.   This shows that the government, after

21  electing not to charge Mr. Bayyouk with conspiracy, is trying to taint him with evidence of the

22  conspiracy.   It is for exactly this reason that courts have been reluctant to allow the government to

23  consolidate the trial of a defendant who is not charged with conspiracy.   *See United States v.*

24  *Satterfield*, 548 F.2d at 1344.   As noted in *Satterfield*: "At a joint trial, where one defendant is

25  charged with offenses in which the other defendants did not participate, the detailed evidence

26  introduced to establish guilt of the separate offenses may shift the focus of the trial to the crimes

27  of the single defendant.   In such cases, codefendants run a high risk of being found guilty merely by

28  association."   *Id.* at 1346.

1    Similarly, in *United States v. Jordan*, 2008 U.S. Dist. LEXIS 59625 (E.D. Tenn. July 22,

2  2008), the district court refused to join the case of a separately charged defendant with others for trial

3  due to "significant risk of substantial and undue prejudice due to the spillover evidence."  The court

4  specifically noted:

> While a limiting instruction to the jury would be curative in most instances, "the rule
> that juries are presumed to follow their instructions is a pragmatic one, rooted less in
> the absolute certitude that the presumption is true than in the belief that it represents a
> reasonable practical accommodation of the interests of the state and the defendant in
> the criminal justice process." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Had
> [the defendant] been originally charged with the [other] defendants, the prospect of a
> curative instruction might appear more reasonable. Until this time, [the defendant] has
> been charged in only [one] conspiracy and the Court is urged to take an affirmative
> step to combine his case (of which he is the lone member for trial) with another case
> charged more than a year before his own. The Court finds that curative jury
> instructions are insufficient to remedy the prejudice here that falls within the
> description of "spillover evidence," but is really more far-reaching than the ill that
> term ordinarily describes.

12  *Id.* at *23-24.

13    Here, Mr. Bayyouk is charged only with making false statements to SEC investigators on a

14  specific date in connection with his basis for trading in a single company's securities.  As argued

15  above, the evidence the government intends to introduce at trial to prove its case on this count is

16  limited to showing that Mr. Bayyouk spoke to Mr. Salman about Biosite prior to trading in its

17  securities, and that Mr. Bayyouk knew Maher Kara.  Joint trial with Mr. Salman would necessitate

18  the introduction of evidence to prove the alleged conspiracy in which Mr. Salman participated which

19  would otherwise not be admissible against Mr. Bayyouk, and would impermissibly and unnecessarily

20  taint Mr. Bayyouk.

## CONCLUSION

22    For all of the foregoing reasons, it is respectfully requested that the government's motion be

23  denied, and that Mr. Bayyouk proceed to trial separately from Mr. Salman.

24  DATED: December 5, 2012            Respectfully submitted,

25                                     LAW OFFICES OF BRIAN H GETZ

26

27                                     _____*/s/Brian H Getz*_____
                                       BRIAN H GETZ

28                                     Attorney for Defendant Karim Iskander Bayyouk

DEFENDANT BAYYOUK'S OPPOSITION TO UNITED STATES' MOTION TO JOIN CASES FOR TRIAL
Case No. CR 12-0420 EMC