UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

    v.

KARIM ISKANDER BAYYOUK,

            Defendant.

_____/

No. CR-12-0420 EMC

**FINAL PRETRIAL CONFERENCE ORDER**

## I.   TRIAL DATE & LENGTH OF TRIAL

Jury selection and trial shall commence on August 26, 2013, at 8:30 a.m.  Trial days shall last from 8:30 a.m. to 2:00 p.m., except that the trial day shall last from 8:30 a.m. to 4:00 p.m. on August 26 and 30, and September 3 and 6.  The Court may determine that additional full trial days are necessary as the trial progresses.  Trial typically is dark on Thursdays, and on Monday, September 2, 2013.  The Court expects trial to be completed by September 6, 2013.

## II.   PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A.   No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness.  If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections.  The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B.  At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial day after next.  Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C.  With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by Wednesday, August 21, 2013, at 5:00 p.m.  If any such exhibits are still objected to, both counsel shall notify the Court by August 22, 2013, at 5:00 p.m., and shall identify the exhibits at issue and the objections.  The Court will then address the dispute on the first day of trial, August 26, 2013, before any testimony begins.

D.  If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day.  The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

### III.   PROCEDURE FOR WITNESSES AT/DURING TRIAL

A.  Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness.  At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case.  No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B.  Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order.  At the end of each trial day, Counsel shall give opposing counsel notice of which witnesses will be testifying on the following day.  At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next.  Witnesses may be taken out of order if necessary.  Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.  Only one lawyer for each party may examine any single witness.

D.      If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes.  If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E.      Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court.  The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.      Witnesses shall be excluded from the courtroom until completion of their testimony.

## IV.    OTHER PROCEDURES AT TRIAL

A.      To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant).  There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.      Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances.  Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*.  Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## V.    GOVERNMENT'S MOTIONS IN LIMINE

A.      Motion in Limine No. 1

        The government files a motion in limine seeking to admit evidence of securities trading by Michael Kara, Emile Jilwan, Joseph Azar, Nassar Mardini and Hani Bayyouk contemporaneous with trades made by Defendant.  Docket No. 56.  Specifically, the government seeks to admit the testimony of Kara, Azar, and Mardini, and business records relating to their trading activities.  The government contends that this evidence is relevant to show that Defendant made false statements to the Securities and Exchange Commission ("SEC"), including his statement that he did not discuss Biosite Incorporated ("Biosite") with anyone before trading the company's stock.  The government contends that this evidence is also relevant to establish Defendant's motive to lie to the SEC:  the desire to eliminate himself and his brother Hani Bayyouk as suspects in the insider trading scheme or other wrongdoing.  The government contends that Defendant made nearly $1 million trading in

3

Biosite call options between Friday, March 23 and Wednesday March 28, 2007.  Docket No. 82 Ex. A.  This was the first and only time he traded in Biosite.  This Court concurs that evidence of contemporaneous trading patterns of others who are alleged to be part of the same scheme is relevant to the question of whether Defendant's statements to the SEC were false.

Defendant objects to the government's use of the word "tippee" to refer to any of these witnesses, but does not otherwise oppose this motion.  Docket No. 77.  Defendant argues that labeling these individuals "tippees" amounts to an improper legal conclusion that invades the province of the jury as finder of fact, and that such terminology will prejudice Defendant The government objects to Defendant's request, arguing that the evidence will show that the individuals in question did receive a "tip," and that it would be awkward, confusing, and unnecessary to prohibit the government from using the word "tippee."  Docket No. 87.

Defendant cites several cases in support of his argument, but none support his position.  One case does not address the definition of "tippee," though it does note that the intent to deceive or defraud is an element of a violation of Section 10(b) of the Securities Act of 1934.  *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1435 (9th Cir. 1984).  Another discusses the elements of "tipper/tippee insider trading," and denies summary judgement because there were questions of fact on such issues as whether the alleged tipper and tippee had discussed inside information, and whether the tippee had been acting on such information in making certain trades.  *S.E.C. v. Dunn*, 2:09-CV-2213-JCM-LRL, 2011 WL 2623509 (D. Nev. June 30, 2011).  Neither case deals with the question of whether allowing the government to use the term "tippee" to discuss witnesses who are allegedly part of the same scheme as the defendant is unfairly prejudicial at trial.

The government's motion in limine is therefore **GRANTED**.  The government is not prohibited from referring to any individual as a "tippee."  However, prior to using this term for the first time, the government is directed to provide a neutral definition of the word that indicates that the term simply refers to individuals who have received certain information, and that the term "tippee" itself does not necessarily indicate that the individual has acted unlawfully.

B.      Motion in Limine No. 2

The government's second motion in limine seeks admission of various summary charts: Trial Exhibits 2, 78, 82, 87, and 92.  Docket No. 60.  These exhibits were prepared by an FBI Special Agent, and summarize some of the bank, brokerage, and telephone records in this case.  The government will also seek admission of the underlying business records.

The Federal Rules of Evidence permit a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  F.R.E. 1006.  The proponent of such evidence, must, however, make the underlying documents available for inspection and copying.  *Id.*  Though charts and summaries are generally not themselves considered evidence, the Ninth Circuit has "not articulated a bright-line rule against admission of summary charts as evidence," particularly where such charts may assist the jury in evaluating voluminous evidence.  *United States v. Anekwu*, 695 F.3d 967, 982 (9th Cir. 2012) cert. denied, 133 S. Ct. 2379, 185 L. Ed. 2d 1094 (U.S. 2013) (internal citation and alternations omitted).

This Court finds that the summary charts will aid the jury in evaluating evidence.  As the underlying documents will also be admitted into evidence, the danger that such charts will be misleading is minimized.  Defendant does not oppose the government's motion in limine, but reserves his right to raise specific objections if the testimony describing the charts at trial is cumulative or repetitious.  Docket No. 78.

The government's second motion in limine is therefore **GRANTED**.  This is without prejudice to Defendant's ability to raise objections to the manner in which this evidence is presented at trial.

C.      Motion in Limine No. 3

The government's third motion in limine seeks admission of evidence seeks to compel Defendant to provide reciprocal testimony under Federal Rule of Criminal Procedure 16(b) and the Jencks Act, or, in the alternative, to preclude Defendant from relying on any undisclosed responsive evidence in his case-in-chief.  Docket No. 61.  At the pre-trial conference, the government indicated that it was particularly concerned with three categories of evidence upon which Defendant might

rely:  (1) any documents providing an alternative or exculpatory explanation for certain funds transferred between Defendant and Bassam Salman; (2) documents indicating any other information that Defendant relied on in making the trades in question; and (3) the identity of any character witnesses Defendant may call at trial.  Defendant does not oppose this motion, nor does he dispute that he has as of yet made no disclosures.  Docket No. 79.  He represents that he is waiting for the government "to present its evidence which will define the record at trial," at which point he will comply with his obligations under Rule 16.

The government's third motion in limine is therefore **GRANTED**.  In order to provide the government with adequate advance notice of any such materials, Defendant is directed to make all required disclosures, including producing information required by Rule 16(b) and the three categories of information discussed above (if applicable), by no later than August 16, 2013.

D.     Motion in Limine No. 4

The government's fourth motion in limine seeks an order prohibiting Defendant from introducing evidence or argument about why Defendant was not charged with insider trading as well as obstruction of the SEC's investigation into insider trading.  Docket No. 62.  The government indicates that it intends to present evidence regarding the alleged insider trading scheme to prove Defendant's motive to lie to the S.E.C.  The government argues, however, that speculation related to its decision not to charge Defendant with insider trading should be excluded pursuant to F.R.E. 403 because the government's decisions about what charges to bring are irrelevant and generally considered an improper subject of argument.  Defendant opposes, arguing that the fact that he was not charged with either insider trading or conspiracy is exculpatory.  Docket No. 80.

Courts have recognized that "many factors unrelated to guilt may influence" a prosecutor's charging decisions, and that the admission of evidence related to such decisions "therefore risks misleading the jury and confusing the issues."  *See United States v. Reed*, 641 F.3d 992, 993 (8th Cir. 2011) (collecting cases).  In *United States v. Stewart*, where the defendant charged with obstruction of justice in the course of an insider trading investigation, the government brought a motion in limine essentially identical to the one sought by the government here:

> The Government seeks to prevent defendants from inviting the jury to speculate about why the indictment does not charge the crime of insider trading.
>
> Clearly, defendants may inform the jury that the indictment does not charge them with the crime of insider trading.  But defendants may not invite the jury to speculate as to why that charge was not included in the indictment.  Nor may they argue that the absence of an insider trading charge proves their innocence of such activity.
>
> If the Government presents arguments or evidence that tend to show that defendants were motivated not only by the fear that they would be accused of trading illegally, but also that such a fear was justified – that is, that Stewart's trading was illegal – then it will open the door to defense evidence that the conduct was not illegal.

*United States v. Stewart*, 03 CR.717(MGC), 2004 WL 113506, at *1-2 (S.D.N.Y. Jan. 26, 2004).

Given the variety of factors that may influence the prosecution's decision about what charges to bring against a defendant, the Court finds that speculation about the reason Defendant was not charged with insider trading is irrelevant.  What is not irrelevant, however, is evidence or argument regarding whether the alleged insider trading scheme existed, and what Defendant knew of any such scheme.

The government's fourth motion in limine is therefore **GRANTED**, and Defendant is prohibited from introducing evidence or argument about the government's decision not to charge him with insider trading (and why), but not from presenting evidence or argument about any underlying activities in which he or the alleged co-conspirators engaged.  Upon any party's request, the Court may instruct the jury not to speculate as to why Defendant was not so charged.

## VI.    DEFENDANT'S MOTIONS IN LIMINE

A.    Motion in Limine No. 1

Defendant's first motion in limine seeks to exclude certain hearsay testimony from the government's witness Michael Kara consistent with statements made in connection with Mr. Kara's plea agreement.  Docket No. 51.  Specifically, he objects to Mr. Kara's anticipated testimony that he spoke to Bassam Salman about the SEC investigation, and that Mr. Salman told Mr. Kara that he traded on the confidential information through "his brother-in-law in Detroit" (Defendant) in order to protect the various individuals involved in the scheme.  Defendant argues that such statement is inadmissable hearsay that does not fall within the co-conspirator exception to the hearsay rule

7

because it was not made in furtherance of the alleged conspiracy.[1]  *See* F.R.E. 801(d)(2)(E)

(statement is not hearsay when it is offered against opposing party and "was made by the party's

coconspirator *during and in furtherance of the conspiracy*").  On the record currently before the

Court, it does not appear that Mr. Salman's statement to Mr. Kara was made during and in

furtherance of the conspiracy.  Defendant is thus correct that this exception would not apply.

Defendant additionally argues that admission of such statements would violate his rights

under the Confrontation Clause.  He notes that testimonial statements, are inadmissible even where

they otherwise fall within a hearsay exception unless the declarant is unavailable and the defendant

had a prior opportunity for cross-examination.  *See Crawford v. Washington*, 541 U.S. 36, 68

(2004).  Defendant does not argue that this statement was testimonial, and there is no indication that

it was.  *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1267 (9th Cir. 2013) ("A statement is

testimonial when it is made under circumstances which would lead an objective witness reasonably

to believe that the statement would be available for use at a later trial. . . .  [The Ninth Circuit has

previously found] that the mere possibility that a record could be used in a later criminal prosecution

does not render it testimonial.  Rather, there must be some additional showing that the primary

purpose of the document is for use in litigation") (internal citations omitted).

The "stringent requirement of confrontation" articulated in *Crawford* does not apply to non-

testimonial evidence.  *United States v. Hagege*, 437 F.3d 943, 958 (9th Cir. 2006); *see also United

States v. Norwood*, 555 F.3d 1061, 1066 (9th Cir. 2009) ("This Circuit has interpreted the Supreme

Court's ruling in Crawford to allow the admission of nontestimonial statements without scrutiny

under the Confrontation Clause.") *cert. granted, judgment vacated on other grounds*, 558 U.S. 983,

130 S. Ct. 491, 175 L. Ed. 2d 339 (2009).  The challenged statement here does not appear to be

testimonial; its admission is not barred by the Confrontation Clause.

---

[1] Defendant also argues that this hearsay exception would be inapplicable because he has not been charged with conspiracy and is not alleged to be a member of a conspiracy.  Though the indictment does not specifically allege conspiracy, it does appear that the government alleges some form of conspiracy between Defendant and others involved in the alleged insider trading scheme. Further, this hearsay exception is applicable "where there is independent evidence of a concert of action," even where conspiracy is not formally charged.  *United States v. Gonzalez*, 715 F.2d 1411, 1412 (9th Cir. 1983).

1    The government states that at this time it does not intend to introduce the statement identified

2    by Defendant in its case-in-chief, nor does it intend to offer statements made by Mr. Salman to Mr.

3    Kara for the truth of the matter asserted.  Docket No. 72.  It indicates that it may, however, introduce

4    statements made by Mr. Salman to Mr. Kara for other purposes, such as to show that Mr. Salman

5    understood Mr. Kara.  At the pre-trial conference, the government provided some examples of

6    statements by Mr. Salman that did not specifically reference Defendant.  Defendant indicated that he

7    likely would not object to the introduction of such statements where relevant if they did not

8    inculpate Defendant.  The Court stressed that if any non-hearsay purpose is asserted, that purpose

9    must be relevant to the issues in this case.

10    Defendant's motion in limine is therefore **GRANTED** to the degree that the government

11    may not introduce Mr. Salman's out of court statements to Mr. Kara for the truth of the matter

12    asserted.  The Court reserves ruling at this time on the admissibility of any particular out of court

13    statement by Mr. Salman for some purpose other than the truth of the matter asserted.

14    B.    Motion in Limine No. 2

15    Defendant's second motion in limine seeks to exclude reference to the pending charges of

16    Bassam Salman, or to any other criminal history of Mr. Salman.  Docket No. 52.  Defendant argues

17    that such information is not relevant to any issue in this trial, and that it would be unfairly

18    prejudicial because it could cause the jury to impute guilt to Defendant by association.  *See* F.R.E.

19    401, 403.

20    The government does not object to the exclusion of evidence of the criminal charges pending

21    against Mr. Salman, concurring that the pending criminal charges are not relevant.  Docket No. 71.

22    The government also indicates that it does not intent to introduce evidence of any other criminal

23    charges.  The government does contend, however, that it should not be barred from introducing

24    evidence or argument that Mr. Salman was in fact involved in an insider trading scheme.  Docket

25    No. 71.  The government argues that such involvement gave Defendant a motive to lie to the S.E.C.

26    to protect Mr. Salman, who is Defendant's brother-in-law, and that Mr. Salman's activities are thus

27    relevant to the case against Defendant.

28

1    The Court finds that while the fact that criminal charges have been brought against Mr.

2 Salman is irrelevant, the underlying activities that form the basis for those charges are relevant to

3 this action.  Defendant's second motion in limine is therefore **GRANTED** and the government may

4 not introduce evidence of the fact that there are criminal charges pending against Mr. Salman.  This

5 does not, however, bar the government from introducing evidence or argument regarding Mr.

6 Salman's activities that formed the basis for such charges, where such evidence or argument is

7 otherwise relevant and admissible.

8 C.    Motion in Limine No. 3

9    Defendant's third motion in limine seeks admission of evidence regarding Defendant's

10 character for honesty and integrity.  Docket No. 53.  Criminal defendants may generally offer

11 evidence of their pertinent character traits under the Federal Rules of Evidence.  F.R.E.

12 404(a)(2)(A); F.R.E. 405(b) ("When a person's character or character trait is an essential element of

13 a charge, claim, or defense, the character or trait may also be proved by relevant specific instances

14 of the person's conduct.").  Here, Defendant has been charged with making false statements to the

15 S.E.C. in the course of that agency's investigation of insider trading, charges which implicate

16 Defendant's character for honesty.  In a similar case, the court in *United States v. Brown* noted that

17 "Defendants have been charged with obstruction of justice and making false statements.  The Court

18 concludes that such charges implicate the truthfulness and veracity of Defendants, and accordingly

19 Defendants may offer character evidence with respect to these character traits."  503 F. Supp. 2d

20 239, 241 (D.D.C. 2007).

21    The government does not contest that Defendant may offer evidence as to his character for

22 truthfulness, but argues that ruling on this motion is premature as Defendant does not identify the

23 specific evidence he intends to introduce on this question.  Docket No. 73.  The government

24 contends that some such evidence may be otherwise subject to exclusion under F.R.E. 403.

25    Defendant's third motion in limine is **GRANTED**, and he will be permitted to introduce

26 evidence of his character for honesty and integrity.  This ruling is without prejudice to the

27 government's ability to object to the specific evidence offered for this purpose on other appropriate

28 grounds.

D.      Motion in Limine No. 4

Defendant additionally joins a motion, brought in the related case *United States v. Salman*, CR11-0625, challenging the competency of the government's witness Michael Kara, and requesting production of certain materials relevant to Mr. Kara's mental health history.  Docket No. 54.  On July 25, 2013, the Court issued an order granting that motion in part as to Mr. Salman, and directed Mr. Kara to submit supplemental briefing on the question of how the issues raised by Mr. Salman applied in this case.

Defendant's response indicates that Mr. Kara is expected to testify to conversations he had with Mr. Salman in which Mr. Salman stated that he conducted his trading through Defendant.  Docket No. 82 (filed under seal).  The government has indicate that it does not object to Defendant's joinder to the motion filed in *United States v. Salman*, or to Defendant's argument that the arguments raised by Mr. Salman apply with equal force in the instant case.  Docket No. 84.

The Court therefore finds that the terms of the July 25, 2013 order apply with equal force in the case against Defendant.  Pursuant to that order, the Court finds Mr. Kara competent to offer testimony at trial, *See* F.R.E. 601, but conditions his testimony on the government's production of the documents identified in the July 25, 2013 order.  The restrictions on the use of those documents stated in that order apply with equal force here.

## VII.    WITNESSES & EXHIBITS

The government has submitted a witness list identifying nine individuals but reserving its rights to amend this list for good cause at a later date.  Docket No. 67.  Defendant has filed no objections to these witnesses.

To date, Defendant has not filed a witness list, though his trial brief indicates that he intends to call several character witnesses, "including family members and upstanding members of the community."  Docket No. 55 at 2.  He does not specifically name any of these individuals.  Defendant shall file a preliminary witness list by August 16, 2013.

The parties have filed a joint exhibit list, identifying exhibits 1-409.  Docket No. 85.  This list indicates that there are no present objections to any exhibits.  The parties have also filed two stipulations that certain exhibits are admissible pursuant to Federal Rule of Evidence 803(6) over

11

any objections as to hearsay, authenticity, and best evidence.  Docket No. 63 (listing exhibits 144-55, 162-66, 168-78, 183-84, 186-89, 191, 193-94, 276, 278, 284, 286, 301, 305, 307, 307-08, 329, 336-37, 352-54, 372, 374, 380, and 382); Docket No. 89 (listing exhibits 9, 12, 17-18, 233-34, 246-49, 252, 263, 265, 277, 285, 297, 303, 306, 317, 328, 335, 373, 381, 143, 330).  The latter stipulation also lists a number of exhibits for which the parties waive any objections as to authenticity and best evidence.  Docket No. 89 (listing exhibits 90-91, 251, 393-405).  The parties reserve all other objections as to these exhibits.

## VIII.    JURY VOIR DIRE

Both parties have submitted proposed questions for voir dire.  Docket Nos. 69, 75.  The Court intends to begin voir dire by asking the jurors for the following information:

1.    Name
2.    City of Residence
3.    Occupational Status
4.    Educational Background
5.    Organizations
6.    Hobbies
7.    Marital Status
8.    Spouse's Occupation
9.    Children (including ages)
10.    If a Juror on Another Case
11.    If Ever a Grand Juror
12.    If Ever in the Military

The Court will additionally ask questions 1-6, 9-14, 16, and 18 from the government's proposed list and questions A18, B2, B4, C1, D1, D4, F1  from Defendant's proposed list.  The Court will make small changes to the wording of two of these questions, so that they read (alterations in italic):

- Government's Question 9:  Do members of your family or others close to you *trade* actively in the stock market?

12

1      •      Defendant's Question F1:  If at the close of this case, after careful deliberations, you

2             discovered that the majority of your fellow jurors disagreed with you, would you

3             change your mind *simply* because you were in the minority?

4    Each party will be provided additional time (20 minutes) to conduct its own voir dire.

5                        **IX.     JURY INSTRUCTIONS & JURY VERDICT FORM**

6            The parties have submitted stipulated proposed jury instructions and provided separate

7    filings on the one disputed instruction.

8            The Court shall file shortly hereafter proposed jury instructions.  **The parties shall provide**

9    **comments on the instructions on a date to be specified**.  On August 13, 2013, the parties shall

10   submit a list of any stipulated facts to be read to the jury with the initial instructions.  By that date,

11   the parties shall also file a short stipulated description of the case to be read to prospective jurors.

12           The government has filed a proposed verdict form.  Docket No. 68.  Defendant shall file any

13   objections by August 9, 2013.

14           This order disposes of Docket Nos. 51, 52, 53, 56, 60, 61, and 62.

15

16           IT IS SO ORDERED.

17

18   Dated:  August 7, 2013

19

20                                                    _____
                                                      EDWARD M. CHEN
21                                                    United States District Judge

22

23

24

25

26

27

28