BRIAN H GETZ, ESQ. (CSBN 85593)
LAW OFFICES OF BRIAN H GETZ
44 Montgomery Street, Suite 3850
San Francisco, CA  94104
Telephone: (415) 912-5886
Facsimile: (415) 438-2655
Email: bhgetz@pacbell.net

Attorney for Defendant
KARIM ISKANDER BAYYOUK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KARIM ISKANDER BAYYOUK,<br><br>　　　　　Defendant. | CASE NO. CR-12-0420-EMC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>DATE:  APRIL 15, 2014<br>TIME:   2:15 P.M.<br>CTRM: 5, 17TH FLOOR |

### INTRODUCTION

　　　　Defendant Karim Iskander Bayyouk appears for sentencing after his conviction on one count of obstruction of proceedings before the SEC, in violation of 18 U.S.C. section 1505, and submits this Sentencing Memorandum in advance of the hearing on April 15, 2014, with letters of support attached hereto as Exhibit A.  Mr. Bayyouk respectfully submits that a sentence below the Guidelines range is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

## **RELEVANT FACTS REGARDING THE DEFENDANT**[1]

Mr. Bayyouk emigrated to the United States with his family from the West Bank when he was 12 years old.  He is a naturalized U.S. citizen.  The family settled in Michigan, and his father operated a shoe repair business.  The transition was initially difficult, but Mr. Bayyouk settled in and graduated from the local high school in Livornia in 1983.  His parents died young, his father of bone cancer when Mr. Bayyouk was 18, and his mother after a heart attack when Mr. Bayyouk was in his late 20s.

Mr. Bayyouk is now 49 years old, and has been married for eighteen years to Rana Bayyouk, who was a student majoring in psychology at Northwestern University when they met.  The couple has four children, ages 17, 14, 12 and 3.  Mr. Bayyouk is close to his children, and spends his free time attending his daughter's soccer games and his kids' other sports events.  His oldest son has special needs, and Mr. Bayyouk takes him to work with him on the weekends when he is not in school.  The 12-year-old, Anthony, was born with a heart defect, has suffered health problems his entire life as a result, and will require another surgery to repair a valve in his heart.

Mr. Bayyouk himself has a heart problem, diagnosed about five years ago as atrial fibrillation, which is caused by an irregular heartbeat.  His condition stabilized about a year ago through a combination of medication, regular exercise, and reduced stress by fewer work hours.  Mr. Bayyouk's mother's family has a history of heart attacks.

Mr. Bayyouk has worked extremely hard his entire life, beginning part-time work as a busboy and cook at age 15, and then beginning to work for his brother at age 18 in a Dunkin Donuts franchise.   Mr. Bayyouk went on to own and operate his own donut franchise for almost 20 years, and now operates four branches of a fish and chicken carry-out restaurant in the Detroit area owned by Bassam Salman.  None of these restaurants alone would support Mr. Bayouk's family, so Mr. Bayyouk operates four restaurants in order to get the appropriate economy of scale.  Mr. Bayyouk works seven days a week, and dreams of being able to grow

---

[1] The facts in this section are taken from the Presentence Report ("PSR") and the attached supporting letters.

the business to the point where he is able to hire someone to assist him with the day-to-day operations, so that he would be able to devote more time to his family.

As the letters of support attest, Mr. Bayyouk is very involved in community and church charitable activities.  He is known, and has been featured on local news stories, for his efforts to feed the poor in the community.  Mr. Bayyouk has fed people who do not have money, but come to his restaurants because they are hungry and need food.  He has been active in in helping his church's mission in promoting food for the hungry and holding a coat and mitten drive for children.  These activities have been an important part of Mr. Bayyouk's life not just recently, but over decades.  The Reverend Shalhoub, pastor of Mr. Bayyouk's church, attests that, fifteen years ago, Mr. Bayyouk and his wife were instrumental in holding a Thanksgiving dinner for the elderly and homeless in the area.  Mr. Samaan, an attorney who has known Mr. Bayyouk for over twenty years, writes that Mr. Bayyouk's "generosity to civic causes is well known.  I do not believe that there has been a school group, community organization or Church that has failed to receive support from Karim."  Mr. Bayyouk donates money to the church's efforts to help the elderly and the poor, and he and his family donate many hours of their time.

Mr. Bayyouk has had no prior criminal record and has had no other contacts with law enforcement.  His pastor notes that he is very remorseful for his conduct.

## THE APPLICABLE GUIDELINE SENTENCE

The applicable Guideline for obstruction of justice is U.S.S.G. § 2J1.2, which provides a base offense level of 14.

The government has urged, and the Presentence Report agrees with the applicability of, a three-level upward adjustment pursuant to U.S.S.G. § 2J1.2(b)(2), for a total offense level of 17,[2] and a resulting guideline range of 24-30 months.  PSR Sentencing Recommendation, page 1. For the following reasons, such adjustment is not appropriate in this case.

Section 2J1.2(b)(2) authorizes a three-level adjustment if "the offense resulted in a substantial interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2). The accompanying commentary provides, in part:

---

[2]   Paragraph 99 of the PSR incorrectly states the total offense level as 18.

3
**DEFENDANT'S SENTENCING MEMORANDUM**
**CASE NO. CR-12-0420-EMC**

> Substantial interference with the administration of justice includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial government or court resources.

*Id.*, Application note 1.  The commentary adds that the "specific offense characteristics reflect the more serious forms of obstruction." *Id*., Commentary note 1.   Mr Bayyouk respectfully submits that this case does not reflect "the most serious form of obstruction."

In *United States v. Haggard*, 41 F.3d 1320 (9th Cir. 1994), the District Court imposed, and the Ninth Circuit affirmed, the three-level upward adjustment based on the financial loss created by defendant's conduct.  Haggard had made repeated allegations, and testified before the grand jury, that he knew where the body of Michaela Garecht, a Bay Area girl kidnapped several years before, was located, and knew the identity of her killer.  The FBI was led on a four-hour, 100-mile wild goose chase around the Bay Area by the allegations, and "wast[ed] approximately $89,000 unraveling Haggard's twisted tale." *Id*. at 1328.  Here, by contrast, it has not been shown that Defendant's actions caused the <u>unnecessary</u> expenditure of substantial government resources.  The expenses associated with the investigation and prosecution of the underlying obstruction offense should not form the basis of an upward adjustment under § 2J1.3(b)(2).  *United States v. Duran*, 41 F.3d 540, 542-43, 546 (9th Cir.1994) (Section 2J1.3(b)(2) adjustment reversed where it was based solely on the cost of investigating and prosecuting defendants for offenses of conviction including obstruction and perjury).  Here, the costs cited in support of the applicability of the adjustment are in fact those incurred in the investigation of Mr. Bayyouk's obstruction offense, the offense of conviction.  The costs cited were incurred in "connecting Mr. Bayyouk to the possible insider trading scheme carried out by Maher and Michael Kara." PSR, ¶62.  As such, these are not additional expenses above and beyond those required to investigate and prosecute Mr. Bayyouk and, under *Duran*, such expenses cannot support the requested enhancement, which should not be applied.  Mr. Bayyouk respectfully submits that the total offense level for his offense of conviction is 14, with an applicable guidelines range of 15-21 months.

DEFENDANT'S SENTENCING MEMORANDUM
CASE NO. CR-12-0420-EMC

## **A VARIANCE IS APPROPRIATE IN THIS CASE**

The PSR submits that a guidelines sentence is warranted by "the sophisticated manner of the insider trading scheme behind the defendant's instant offense, the lengths to which the defendant and Mr. Salman went to cover up their activity, and the complications that the defendant's obstruction caused the SEC investigation." PSR Sentencing Recommendation at page 2. Mr. Bayyouk respectfully disagrees. First, Mr. Bayyouk was not convicted of insider trading. Instead, he was convicted of a single act of obstruction – lying to the SEC during his interview on the afternoon of May 31, 2007. The conduct for which Mr. Bayyouk must be sentenced is his obstruction of justice in lying to the SEC, and not the allegedly sophisticated insider trading scheme perpetrated by the Karas and others. Mr. Bayyouk's statements to the SEC investigators were neither sophisticated nor elaborate; he simply denied having received or passed on information from or to others. Similarly, "the lengths to which the defendant and Mr. Salman went to cover up their activity" does not counsel in favor of a guideline sentence. The trading account was in Mr. Bayyouk's name; there was no lengthy or elaborate cover-up. Finally, the "complications that the defendant's obstruction caused the SEC investigation" are the basis for the government's and the Probation Officer's concurrence that a three-level upward adjustment is warranted. As noted above, such adjustment should not be applied in this case.

In *United States v. Booker*, 125 S. Ct. 738, 757 (2005), the Supreme Court abandoned the rigidity of the guidelines, making the guidelines advisory only and authorizing judges to consider the full range of relevant considerations in imposing a fair and reasonable sentence. The Sentencing Reform Act, as revised by *Booker*, permits the court to tailor the sentence in light of other statutory concerns, such as the factors listed in 18 U.S.C. §3553(a). The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).

There are factors present in this case which, taken together, form the basis for a variance from the applicable guidelines range.  Mr. Bayyouk is 49 years old, and has had no prior contact with law enforcement.  Although the lack of a criminal history is a factor that has already been considered by the Guidelines, it is a factor to be taken into consideration in determining the "combination of factors" that lead to a downward departure.  *United States v. Fairless*, 975 F.2d 664, 668-69 (9th Cir. 1992).  Mr. Bayyouk has a long history of community service, which supports a variance under U.S.S.G. §§5K2.08(a)(4) and 5H1.11.  Where a defendant has a blameless record, his or her outstanding generosity should be able to be taken into account.  *United States v. Takai*, 941 F.2d 738, 744 (9th Cir. Cal. 1991).  "[T]he district court must make a refined assessment of the many facts bearing on the outcome."  *Koon v. United States*, 518 U.S. 81, 116 S. Ct. 2035, 2046, 135 L. Ed. 2d 392, 413 (1996).  Mr. Bayyouk was convicted of one count of obstruction of justice for lying in his interview with SEC investigators on the afternoon of May 31, 2007.  His conduct in connection with the offense of conviction represents aberrant behavior, a factor which the Court may consider in imposing a sentence below the Guideline range.  *United States v. Takai*, 941 F.2d at 742-44  (aberrant behavior is a mitigating circumstance of a kind or to a degree that the Sentencing Commission did not adequately take into account when formulating the Guidelines); see also U.S.S.G. Ch.1, Pt. A, Intro. (4)(d); *United States v. Martinez-Villegas*, 993 F.Supp. 766, 778 (C.D.Cal. 1998).

Mr. Bayyouk worked hard his entire life to provide for his family, and led a law-abiding until well into his forties.  As the Court heard at trial, it appears that he was presented with an opportunity to make money in a way far easier than through the hard work to which he was accustomed.  Through a grave (albeit perhaps understandable) error in judgment, he took the opportunity presented and, when confronted with his error and asked to identify his brother-in-law, business partner and closest friend as the one who had presented this unique opportunity, he engaged in the conduct which led to his conviction.  The conduct underlying his conviction was clearly aberrant.

The Ninth Circuit has held that there is an "aberrant behavior spectrum" in determining when a departure for aberrant behavior should apply.  *Takai*, 941 F.2d at 743.  Courts may

consider a "convergence of factors" and should take into account the "totality of circumstances" when considering where a defendant's behavior falls along the spectrum and whether to grant a downward departure. *United States v. Fairless*, 975 F.2d at 667-68. Factors have included: (1) the singular nature of the criminal act, (2) spontaneity and lack of planning, (3) the defendant's criminal record, (4) psychological disorders the defendant was suffering from, (5) extreme pressures under which the defendant was operating, including the pressure of losing his job, (6) letters from friends and family expressing shock at the defendant's behavior, and (7) the defendant's motivations for committing the crime. *Id.* at 668; *Takai,* 941 F.2d at 743-44.

In *Takai*, a downward departure was granted for aberrant behavior by "two persons who by happenstance had seen a sudden opportunity to acquire green cards illegally." *Takai* at 744. Here, too, Mr. Bayyouk happenstance was given an opportunity to make easy money, which would alleviate the pressure he felt to work so hard to provide for his family. The supporting letters express shock that he would ever have become involved in criminal conduct, and attest that such conduct is not in keeping with his character and will not be repeated. Finally, as noted, Mr. Bayyouk's motivations appear to have been fear, to protect others, and to protect what he had gained. The PSR's Sentencing Recommendation notes that the offense of conviction was a "very costly mistake, and the undersigned believes that he did so not with any malicious intent, but instead with a blindness brought about by greed and fear." PSR Sentencing Recommendation, page 2.

If the Court decides to apply the three-level enhancement under U.S.S.G. § 2J1.2(b)(2), and additional factor supporting a variance below the guideline range is that Mr. Bayyouk's offense level over-represents the seriousness of the offense behavior under U.S.S.G. § 5K2.0(a)(3). The base offense level for obstruction of justice includes such conduct as using threats or force to intimidate or influence a juror or federal official, or causing bodily injury to a witness in retaliation for providing evidence in a federal proceeding. U.S.S.G. § 2J1.2, Background Commentary. Mr. Bayyouk was convicted of a serious offense, yet the conduct underlying his conviction was less egregious than other possible forms of obstruction.

For these reasons, the Court should consider a sentence below the recommended 24 months, or the 15-21 month guideline range if the enhancement is found not to apply. A sentence of confinement at home or in a half-way house would permit Mr. Bayyouk to continue his employment and support his family, and would ensure that his heart condition is managed though exercise, stress-reduction and medication. Such a sentence is authorized under U.S.S.G. §5C1.1(c)(3) and would be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

## A FINE SHOULD NOT BE IMPOSED

The Presentence report notes, in paragraph 96, that "it does not appear that the defendant has the ability to pay a fine in this matter; however, if the defendant were to liquidate some assets, he might be considered capable of paying a fine." However, the PSR contains the recommendation that Mr. Bayyouk pay a $5,000 fine.

Mr. Bayyouk does not have the ability to pay a fine. The listing of his assets in paragraph 95 of the PSR accurately lists the properties (including rental properties) which he owns, but the listing of liabilities omits his mortgages, in the amounts of $246,147.63 and $104,462, for total additional liabilities in excess of $350,000.00. As a consequence, Mr. Bayyouk's total net worth is far less than that listed in the PSR.

## CONCLUSION

Under the circumstances of this case, incarceration below the guideline range would be sufficient, but not greater than necessary to satisfy the Sentencing Reform Act, as revised by *Booker*. To the extent that the Court requires additional evidence on any issue addressed herein and pertinent to sentencing, Mr. Bayyouk respectfully requests or reserves the right to request an evidentiary hearing.

Respectfully submitted,

Dated: April 8, 2014       LAW OFFICES OF BRIAN H GETZ

_____/s/_____
BRIAN H GETZ
Attorney for Defendant
KARIM ISKANDER BAYYOUK